# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZADRO PRODUCTS, INC., § § *Plaintiff*, § § v. § § SDI TECHNOLOGIES, INC. d/b/a iHOME, § § *Defendant.* § § § | Case No. 17-1406 (WCB) |

## MEMORANDUM OPINION AND ORDER

This is a patent infringement action brought by plaintiff Zadro Products, Inc. ("Zadro") against defendant SDI Technologies, Inc. d/b/a iHome ("SDI"). Before the Court is Zadro's motion to dismiss SDI's third and sixth counterclaims and to strike SDI's tenth affirmative defense. Dkt. No. 57. The Court DENIES the motion.

## BACKGROUND

Zadro owns U.S. Patent No. 8,162,502 ("the '502 patent"), entitled "Illuminated Continuously Rotatable Dual Magnification Mirror," and U.S. Patent No. 8,356,908 ("the '908 patent"), entitled "Rotatable Dual Magnification Mirror with Internal Hoop Illuminator and Movable Reflector Ring." Dkt. No. 1, at 1. Zadro alleges that SDI has infringed, and continues to infringe, at least claims 1-15, 17-18, and 22-23 of the '502 patent and at least claims 9-11 and 28-32 of the '908 patent. *Id.* at 3, 5.

In its First Amended Answer, SDI denies infringement of the '502 patent and the '908 patent. Dkt. No. 55, at 1–5. SDI raises six counterclaims, including two regarding inequitable conduct,

1

which are at issue here. Specifically, the third counterclaim argues that "[t]he '502 patent is unenforceable and void because at least one individual associated with the prosecution of the '502 patent violated his or her duty of candor and good faith in dealing with the United States Patent and Trademark Office (the 'PTO' or 'Patent Office') by intentionally and deceptively failing to disclose material information to the PTO during prosecution." *Id.* at 8. And the sixth counterclaim similarly argues that "[t]he '908 patent is unenforceable and void because one or more individuals associated with the prosecution of the '502 and '908 patents violated their duty of candor and good faith in dealing with the [PTO] by intentionally and deceptively failing to disclose material information to the PTO during prosecution." *Id.* at 35. Additionally, SDI raises ten affirmative defenses, including that "[t]he Patents-in-Suit are unenforceable by reason of inequitable conduct, as detailed in the Third and Sixth Counterclaims." *Id.* at 5.

Zadro moves to dismiss with prejudice SDI's third and sixth counterclaims under Federal Rule of Civil Procedure 12(b)(6), and it moves to strike with prejudice SDI's tenth affirmative defense under Federal Rule of Civil Procedure 12(f). Dkt. No. 57.

## DISCUSSION

### I. Standard of Review

#### A. Pleading Inequitable Conduct

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, No. CV 12-1461-LPS-CJB, 2017 WL 239326, at *3 (D. Del. Jan. 19, 2017). In considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the

plaintiff may be entitled to relief." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). Nonetheless, as the Supreme Court has made clear, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Above and beyond the *Iqbal/Twombly* pleading standard, any allegations of inequitable conduct must satisfy Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) ("'[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b)" (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003))); *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. CIV.A. 09-955-LPS, 2012 WL 600715, at *5 (D. Del. Feb. 3, 2012). "[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327.

Rule 9(b) also states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "The relevant 'conditions of mind' for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327. Although "knowledge" and "intent" may be asserted generally, a sufficient pleading of inequitable conduct must "recite[] facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that

3

information with a specific intent to deceive the PTO." *Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (citing *Exergen*, 575 F.3d at 1318, 1330).

### B. Motion to Strike Under Rule 12(f)

"Rule 12(b)(6) does not offer a mechanism for dismissing an affirmative defense." *Wyeth*, 2012 WL 600715, at *4. Instead, "pursuant to Rule 12(f), the Court 'may strike from a pleading any insufficient defense.'" *Id.* (quoting Fed. R. Civ. P. 12(f)). Generally, motions to strike under Rule 12(f) are disfavored and "[a] court should not strike a defense unless the insufficiency is 'clearly apparent.'" *Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010) (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)). "However, 'a court is not required to accept affirmative defenses that are mere bare bones conclusory allegations, and may strike such inadequately pleaded defenses.'" *Fesnak*, 722 F. Supp. 2d at 502 (quoting *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 408 (D. Del. 2009)).

## II. Motion to Dismiss SDI's Third and Sixth Counterclaims

Zadro argues that SDI fails to plead inequitable conduct with the particularity required by Rule 9(b). Dkt. No. 58, at 7. According to Zadro, SDI "fails this standard because it has not cured the implausible 'confused estoppel' and circular 'cover up' theories underlying its allegations." *Id.* The Court disagrees.

### A. The "Confused Estoppel" Theory

Zadro characterizes the defendants' theory of inequitable conduct as a "confused estoppel" theory. Zadro bases that characterization on the following: SDI insists that if Zadro wishes to have the claims of its patents construed broadly in the litigation, then Mr. Zadro should have disclosed certain prior art references during patent prosecution, as the prior art references would read on the claims under that broad construction. Dkt. No. 58, at 7; *see Kranos IP Corp. v. Riddell, Inc.*, 334 F.

Supp. 3d 907, 913 (N.D. Ill. 2018) ("Riddell's argument boils down to a confused estoppel theory: because Schutt *now* claims an expansive reading of claim 14, its agents had a duty *several years ago* to disclose all prior art falling within that expansive reading."); see also Dkt. No. 55, ¶ 42(f).[1] Zadro argues that such a theory is improper because the focus of an inequitable conduct claim must be on what the patent examiner would have considered material prior art at the time of patent prosecution. *See* Dkt. No. 58, at 7–8; *Kranos IP*, 334 F. Supp. 3d at 913 ("When pleading how omitted prior art is material, a claimant must allege facts that lead to the conclusion that *the examiner* would have denied the application ha[d] she been aware of the omitted prior art reference.").

SDI responds that, contrary to Zadro's characterization of the amended answer, SDI "has identified much more than a plan to assert an expansive view of the claims." Dkt. No. 65, at 6. SDI contends that it "has identified four separate prior art references, explained their materiality with claim-chart-level detail, and provided facts to support the conclusion that Mr. Zadro knew of each reference and intentionally withheld it with the intent to deceive the Patent Office." *Id.* at 6–7.

The Court finds that Zadro's focus on the so-called "confused estoppel" theory ignores the numerous paragraphs of the amended answer that, *inter alia*: name the specific individual associated with the filing of the patent applications; identify which claims, and which limitations in those claims, the alleged withheld references are relevant to; and state why and how the alleged withheld references are material. *See Exergen*, 575 F.3d at 1329–30; *see also* Dkt. No. 55, ¶¶ 20–223. Specifically, the Court finds that SDI:

---

[1] Any citation to a paragraph is associated with the counterclaims section of the amended answer, starting on Dkt. No. 55, page 6.

- Identified the named inventor, Mr. Zadro, and the prosecuting attorney, Mr. Chapin, as specific individuals who knew of the material information and deliberately withheld or misrepresented it. Dkt. No. 55, ¶¶ 21, 22, 111, 112, 124, 125, 220, 221.

- Alleged that Mr. Zadro signed a sworn declaration acknowledging his duty to disclose all information known by him to be material to the patentability of the '502 patent and the '908 patent on May 11, 2009, and December 14, 2009, respectively. *Id.* ¶¶ 110, 219.

- Identified Zadro's ZLD48 and Next Generation LED products as relevant prior art that neither Mr. Zadro nor Mr. Chapin disclosed to the PTO. *Id.* ¶¶ 34–38, 54–57, 74–78, 94–98, 135–42, 156–65, 181–88, 205–08.

- Identified where and when the material information could be found via a link to Zadro's archived websites. *Id*. ¶¶ 25, 62, 167.

- Identified, with claim chart style images, where the asserted claim elements of claim 22 of the '502 patent and claim 28 of the '908 patent can be found in the prior art. *Id.* ¶¶ 25–33, 62–73, 127–38, 167–80.

- Explained the materiality of Zadro's non-disclosure given that "the applicant distinguished the claimed invention over the cited prior art on the basis that, in the claimed invention the illuminated mirror was 'supplied with electrical power through a continuously rotatable joint between the support arm of a yoke and a frame of the mirror,'" and that the ZLD48 product and the Next Generation LED product were both "illuminated mirror[s] that continuously rotated and [were] supplied with power through a joint between the support arm of a yoke and a frame of the mirror." *Id.* ¶¶ 38–39, 57–58, 78–79, 98–99.

Zadro challenges the sufficiency of those allegations by focusing on language from four subparagraphs that emphasize the materiality of the ZLD48 and the Next Generation LED prior art.

Those paragraphs "describe continuously rotatable vanity mirror products that were intended to be covered by one or more claims of the '502 patent [and the '908 patent], and which are certainly covered by the claims when construed in the broad manner that Zadro seeks to construe them in this litigation." *Id.* ¶¶ 42(f), 82(f), 102(f), 166(f). According to Zadro, those paragraphs exemplify the "confused estoppel" theory on which SDI relies. Furthermore, in its reply brief, Zadro identifies several more paragraphs of the amended answer that Zadro believes exemplifies this theory. Dkt. No. 67, at 7–9; Dkt. No. 55, ¶¶ 132, 153, 176, 200. But any deficiencies regarding those paragraphs and subparagraphs do no infect the remainder of the amended answer, which does not rely on Zadro's broad reading of the claims to argue the materiality of the prior art.

The decision in *Kranos*, a case on which Zadro heavily relies, is not to the contrary. In *Kranos*, the court found that the defendant relied solely on the plaintiff's alleged plan to assert an expansive view of a relevant claim in later litigation as "probative of whether the examiner would have concluded that the [prior art] precluded claim 14 for obviousness." *Kranos IP*, 344 F. Supp. 3d at 913 (citing *MadGrip Holdings, LLC v. W. Chester Holdings, Inc.*, No. 16-cv-272, 2017 WL 4335038, at *5–6 (D. Vt. Sept. 27, 2017)). The court held that the defendant, without more, presented "no allegations that sufficiently address[ed] how the PTO would have assessed the [prior art] in relation to claim 14." *Id.* at 914. Here, in contrast, SDI presents allegations (with particularity, as shown above) that sufficiently address the specific who, what, when, where, and how of the material omission committed before the PTO. *See Exergen*, 575 F.3d at 1327.

**B. The "Circular Cover-up" Theory of Intent**

Zadro also asserts that there are deficiencies in SDI's allegations with regard to the issue of intent. First, Zadro argues that the duty to disclose applies only to individuals and not to organizations, yet "parts (a) through (c) of [SDI's] intent allegations . . . accuse 'Zadro [Products]'—

not Mr. Zadro—of withholding prior art." Dkt. No. 58, at 9; *see* Dkt. No. 55, ¶ 42(a)–(c). While true, this argument fails because SDI's intent allegations also accuse Mr. Zadro directly. *See, e.g.*, Dkt. No. 55, ¶ 42(d), (e), (g), (h).

Second, Zadro argues that "even if [SDI] had alleged an individual's intent to withhold prior art, [SDI] still would have failed to plead deceptive intent." Dkt. No. 58, at 9. According to Zadro, SDI's theory of intent fails for three reasons: it is insufficient (1) to allege a non-disclosure and conclude from that non-disclosure that the plaintiff must have acted with a specific intent to deceive, (2) to allege intent to withhold information rather than intent to deceive, and (3) to assume a "consciousness of guilt" based on Zadro's attempts to explain away the archived webpages in the Internet Archive. *See id.* at 9–12. In response, SDI acknowledges that "[b]oth non-disclosure and intent to withhold are elements of intent to deceive," but contends that "Zadro's argument that it is insufficient to plead only one of the three required elements is a truism" that "does not demonstrate a deficiency in SDI's pleading where the other elements are also separately pleaded." Dkt. No. 65, at 10. SDI claims that it has sufficiently alleged that "Zadro knew of the information, knew it was material, and made a deliberate decision to withhold it." *Id.* at 11. And with regard to the Internet Archive, SDI argues that the inequitable conduct allegation would be sufficient "even if the Court were to disregard SDI's pleading concerning Zadro's Internet Archive explanation."[2] *Id.* at 12.

---

[2] In its reply brief, Zadro argues that the Internet Archive images of the Next Generation LED mirror "did not appear on Zadro Products' website until 2011," which would undermine SDI's "consciousness of guilt" theory. Dkt. No. 67, at 1–4. The Court will not explore Zadro's argument on that issue, because the Court is satisfied that intent to deceive is sufficiently pleaded without the "consciousness of guilt" allegations. The Court notes that the potential discrepancy between the capture dates and times of the archived webpages and images does not affect the ZLD48 prior art, and the Court will therefore focus its analysis on SDI's theory of intent as to that product.

At least with regard to the ZLD48 product, the Court finds that, SDI's theory of intent satisfies the pleading requirements for inequitable conduct. While SDI concedes that it "does not yet have direct evidence of the specific intent to deceive," it recites facts from which the Court can reasonably infer that Mr. Zadro both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO. Dkt. No. 55, ¶ 42, 61, 145, 166; *see Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d at 1350. "A reasonable inference is one that is plausible and that flows logically from the facts alleged." *Exergen*, 575 at 1329 n.5; *see Sanders v. The Mosaic Co.*, 418 F. App'x 914, 919 (Fed. Cir. 2011). SDI alleges that Mr. Zadro would have been aware of his duty to disclose due to the prosecution of other patent applications on which he was a named inventor; that Mr. Zadro would have been well aware of the contents of Zadro's website and the nature of its printed publications, because his company was relatively small at the relevant time; that such information would unquestionably have been highly material; and that Mr. Zadro purposely withheld that information. *See, e.g.*, Dkt. No. 55, ¶ 42(d)–(g).

Quoting from a Northern District of California case, Zadro argues that "an intent to deceive cannot be inferred solely based upon the failure to disclose known information, even if it is highly material." *iLife Tech. Inc. v. AliphCom*, No. 14-cv-03345-WHO, 2015 WL 890347, at *8 (N.D. Cal. Feb. 19, 2015). While that is an accurate statement of the law, SDI has not relied solely on such an inference. Instead, as noted above, SDI has additionally pleaded that Mr. Zadro is knowledgeable regarding the disclosure obligations of a patent applicant, that he unquestionably knew of the prior art's materiality, and that despite this knowledge, Mr. Zadro failed to disclose the prior art during patent prosecution. The *iLife* court itself noted that "information about specific intent is often uniquely within the opposing party's control," as is the case here, and that "at least in some cases,

pleadings establishing knowledge of withheld material information can also lead to an inference of specific intent to deceive the PTO." *iLife*, 2015 WL 890347, at *8–9.

Zadro also relies on the proposition that "inequitable conduct requires not intent to withhold, but rather intent to deceive." *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1367 (Fed. Cir. 2003). While that statement is true, it does not suggest that intent to withhold material prior art is not relevant to the issue of intent to deceive. In fact, the Federal Circuit in the case cited by Zadro made that point clear when it explained that intent to deceive cannot be inferred simply from the decision to withhold the reference, but qualified that statement by adding, "where the reasons given for the withholding are plausible." *Id.* At this early stage in the litigation, no plausible reasons for withholding the ZLD48 product are apparent.

In this district, an inequitable conduct claim is rarely disallowed at the pleading stage due to the failure to adequately allege scienter. *See Cornell Univ. v. Illumina, Inc.*, No. CV 10-433-LPS-MPT, 2016 WL 3046258, at *9 n. 89 (D. Del. May 27, 2016); *Wyeth*, 2012 WL 600715, at *14. SDI presents evidence that the ZLD48 product was depicted on the Zadro website in 2005,[3] and alleges that in light of the relatively small size of the Zadro company at that time, Mr. Zadro would have been aware of the contents of Zadro's website and the nature of its printed publications. *See* Dkt. No. 55, ¶ 25, 42(e). Additionally, as noted by SDI, the amended answer "explained that the withheld prior art . . . would have undercut Zadro's arguments during prosecution."[4] Dkt. No. 65, at 11. From

---

[3] The '502 application was filed on May 27, 2009. Dkt. No. 55, ¶ 22.

[4] In its reply brief, Zadro challenges SDI's allegation that the prior art was deliberately withheld because it would have undercut Zadro's arguments during prosecution. Dkt. No. 67, at 5. Zadro argues that this is nothing more than the common-sense observation that any applicant would prefer not to undercut his arguments during prosecution, and that this observation alone is therefore not enough to imply deceptive intent. *Id.* However, while it is not dispositive, it is reasonable to infer that an applicant who is aware of material prior art and the possible adverse effect that disclosure could have on the application would have an incentive to conceal the prior art.

the facts alleged, the Court can reasonably infer deceptive intent. The Court therefore holds that SDI has adequately pleaded a theory of inequitable conduct with the particularity required by Rule 9(b).

### III. Motion to Strike SDI's Tenth Affirmative Defense

SDI's tenth affirmative defense rises and falls with SDI's third and sixth counterclaims. *See* Dkt. No. 55, at 5 ("The Patents-in-Suit are unenforceable . . . as detailed in the Third and Sixth Counterclaims"); *see also St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, No. CV 12-441-RGA, 2014 WL 2622240, at *1 n.1 (D. Del. June 11, 2014). Given that the Court holds that SDI has adequately pleaded inequitable conduct, the Court also denies Zadro's motion to strike.

## CONCLUSION

Zadro's motion to dismiss SDI's third and sixth counterclaims and motion to strike SDI's tenth affirmative defense, Dkt. No. 57, are DENIED.

IT IS SO ORDERED.

SIGNED THIS 8th day of March, 2019.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE